**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-cr-166-WKW |
| | ) | |
| **JOHN WEBSTER** | ) | |

**MOTION TO SUPPRESS STOP, SEARCH AND SEIZURES**

**COMES NOW** the Defendant, John Webster, by and through undersigned counsel, Michael J. Petersen, and pursuant to the Fourth Amendment, Fifth Amendment, and Equal Protection Clause of the Constitution moves this Court for an Order suppressing any and all evidence seized by the government as a result of the stop of Mr. Webster's vehicle on March 28, 2007.  This evidence includes any statements, physical evidence and/or records obtained as a result of the stop and subsequent search of Mr. Webster or his vehicle.

**Relevant Facts**

On March 28, 2007, a look out was issued by the Montgomery Police Department dispatcher requesting officers to watch for a blue Grand Marquis automobile with the words "Down South Customs" printed on the rear window.  The vehicle had allegedly been involved in a shooting earlier that day.  A report to this effect was also aired at noon that day by Channel 12, a local television station. At approximately 6:40 p.m., Officer Manora of the Montgomery Police Department, observed a blue Grand Am traveling west on Eastern Boulevard near the Troy Highway exit. Printed on the rear window of this vehicle were the words "Down & Dirty Customs."  Officer Manora followed the vehicle until assistance arrived.  At that time, Officer Manora conducted a stop of the

1

vehicle in the Wal Mart parking lot located at 3801 Eastern Boulevard. Officer Manora then asked the driver to exit the vehicle and conducted a "pat down" search. Pursuant to that search, a firearm and a quantity of alleged marijuana was located. Mr. Webster was then arrested. Mr. Webster was subsequently charged in this court in a two count indictment with being a felon in possession of a firearm and with simple possession of marijuana.

## Issue Presented

**Officer Manora's Stop of Mr. Webster's Vehicle was Unreasonable Under the Fourth Amendment Because The Officer Lacked Reasonable Suspicion To Believe Mr. Webster Had Committed An Arrestable Offense.**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *Const. Amend IV*. While not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and it is analogous to an investigative detention. *United States v. Perkins*, 348 F. 3d 965, 969 (11th Cir. 2003).

Traffic stops of a vehicle may be conducted under three circumstances. First, if an officer has cause to believe an individual has committed a traffic infraction, the individual can be stopped and seized while the traffic violation is investigated and activities related to the traffic stop are concluded under *Whren v. United States,* 517 U.S. 806, 810 (1996); *see also United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001). Second, a vehicle can be stopped if the officer has probable cause to believe the vehicle contains contraband or is engaged in criminal activity. That is, law enforcement officers have facts and circumstances within their knowledge which is sufficient to warrant a reasonable belief that the individual had committed or was committing a crime. *See Beck v. Ohio*, 397 U.S.89 (1964); *United States v. Floyd*, 281 F.3d 1346 (11th Cir. 2002). And finally, in

the third instance, an officer may stop a vehicle if the officer has "an objective, reasonable suspicion of criminal activity." *Terry v. Ohio*, 392 U.S. 1 (1968).

When an officer has cause to believe an individual has committed a traffic violation, the individual can be stopped and seized while the violation is investigated and the activities related to the traffic stop are concluded. *Whren v. United States,* 517 U.S. 806, 810 (1996). Mr. Webster asserts that at no time did Officer Manora suggest that the stop of Mr. Webster's vehicle was pursuant to a traffic violation. This is borne out through materials provided to the defense pursuant to this Court's Standing Order on Discovery, in which no suggestion is made that Mr. Webster had committed a traffic violation. Indeed, the only rationale for the stop expressed in the reports from law enforcement officers is the "look out" report from earlier in the day. Therefore the circumstances in the instant matter do not support a stop of Mr. Webster's vehicle. *See Whren,* 517 U.S. 810.

Although *Beck v. Ohio* allows a stop if an officer believes the vehicle contains contraband or was engaged in criminal activity, the present circumstances do not suggest that Officer Manora had probable cause to believe that either of these situations existed. Specifically, Mr. Webster asserts that Officer Manora did not have reasonable suspicion to stop his vehicle because the "look out" issued by the Montgomery Police Department dispatcher was for a Grand Marquis with "Down South Customs" printed on the rear window. Mr Webster asserts that since his vehicle was a Grand Am with "Down & Dirty Customs" printed on the rear window that the "look out" could not reasonably be applied to his vehicle. As previously asserted, no traffic violation was observed nor was a citation issued. Therefore, the only reason Officer Manora had to stop Mr. Webster was the "look out for" a Grand Marquis. The difference between a full-size Grand Marquis and a compact-

size Grand Am are remarkable both in body style as well as in size. In addition, instead of the words "Down South Customs," Mr. Webster's much smaller Grand Am had the words "Down & Dirty Customs" printed on its rear window. Further, because he followed Mr. Webster's vehicle while waiting for assistance, Officer Manora had sufficient time to observe Mr. Webster's vehicle and determine from that observation that it was not the vehicle in question before effecting the unconstitutional stop.

Thus, the issue remaining is whether there was an articulable, reasonable suspicion of criminal activity. The legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Terry* requires that such stops require "an officer [to] have an objective, reasonable suspicion of criminal activity," before seizing (or continuing the seizure of) an individual. *Id*.

Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify an investigatory stop is determined based on the totality of the circumstances, and from the collective knowledge of the officer involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (citing, *Terry v. Ohio* at 1879); See also, *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop). The fact that the driver is nervous, has out-of-state tags and/or provides slightly inconsistent statements does not create "reasonable suspicion" upon which a further detention is warranted. *Perkins*, 348 F.3d at 965; *Pruitt*, 174 F.3d at 1219-1221; *Tapia*, 912 F.2d 1367, 1370. Officer Manora did not have "an objective, reasonable suspicion of criminal activity." *Terry v. Ohio*, 392

U.S. 1 (1968). Indeed, Officer Manora conducted the unconstitutional stop in the parking lot of the Wal Mart store on East Blvd. and indicated no other reason for the stop other than his unreasonable belief that a Grand Am was a Grand Marquis and that "Down & Dirty Customs" read "Down South Customs." The fact that Mr. Webster was driving a Grand Am and there was a "look out" issued by the Montgomery Police Department dispatcher for a Grand Marquis, does not create the "minimal, objective justification" necessary to violate the Fourth Amendment's stricture against "unreasonable searches and seizures." *See United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996).

A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. *Saucier v. Katz,* 533 U.S. 194, 205 (2001); *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003); *United States v. Gonzalez*, 969 F.2d 999, 1006 (11th Cir. 1992); *United States v. Garcia-Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999); *United States v. Shareef,* 100 F.3d 1491, 1503 (10th Cir. 1996); *United States v. Hatley,* 15 F.3d 856, 859 (9th Cir. 1994); *United States v. Lang,* 81 F.3d 955, 966 (10th Cir. 1996). However, an officer's incorrect and *unreasonable* assessment of facts does violate the Fourth Amendment. *See United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003).

Thus, if an officer makes a traffic stop based on a mistake of fact, the only question before the court is whether his mistake of fact was reasonable. The Supreme Court has held that great deference is to be given to the judgment of trained law enforcement officers "on the scene." *See Saucier*, 533 U.S. at 205-206 (discussing excessive force claims while noting that excessive force and probable cause questions are subject to the same Fourth Amendment analysis). "The principal components of a determination of reasonable suspicion or probable cause will be . . . viewed from

the standpoint of an objectively reasonable police officer . . . ." *Ornelas*, 517 U.S. at 696. In *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990), the Supreme Court noted that "what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable."

Officer Manora's incorrect assessment of facts was not reasonable. It is unreasonable for a trained and experienced patrol officer to mistake a compact-size Grand Am for a full-size Grand Marquis and then compound that unreasonable error by mis-reading "Down & Dirty Customs" for "Down South Customs." In *United States v. Simms*, 385 F.3d 1347 (11th Cir. 2004), a panel of the Eleventh Circuit stated in *dicta* that while a BOLO in and of itself would not appear to provide probable cause to search or arrest, it might be sufficient to provide the basis of reasonable suspicion to prolong a *Terry* stop. *Id*. at 1351 n.2. The panel found that the district court had been correct in its finding that the BOLO in *Simms* played no role in the decision to initiate the traffic stop. However, in the instant matter, the "look out" was the only reason Officer Manora offered for stopping Mr. Webster. Thus, it would appear that because of the clear and obvious differences between a full-sized Grand Marquis and a compact Grand Am as well as the different logos in the rear window that there was no reasonable suspicion or probable cause for a trained and experienced patrol officer to conduct a stop of Mr. Webster's Grand Am.

In *United States v. Mackey*, 149 Fed. Appx. 874 (11th Cir. 2005), another panel of the Eleventh Circuit reviewed a matter in which a "BOLO" played a part. However, as in *Simms*, that defendant was also stopped for a traffic violation, specifically, because the vehicle had a brake lamp/taillight out in violation of Florida statue. *Id*. at 879. Thus, *Mackay* and *Simms* are distinguishable because of the fact that there were traffic violations involved in those cases while in

6

the instant case, no traffic violation was observed and the stop was based solely upon the "look out".

In this case, the only reason for Officer Manora to have stopped Mr. Webster was his unreasonable belief that a Grand Am was a Grand Marquis and that "Down & Dirty Customs" read "Down South Customs." Thus, the propriety of the traffic stop does not depend upon whether Mr. Webster is guilty of committing a traffic offense, but rather the question is whether is was reasonable for Officer Manora to believe that a compact-size Grand Am is a full-size Grand Marquis. At an evidentiary hearing, Mr. Webster will show that, for a trained law enforcement officer, assigned to patrol duties, to confuse a Grand Am with a Grand Marquis is unreasonable and a subsequent stop based upon that mistake of fact is a violation of the Fourth Amendment. A traffic stop is a constitutional detention if it is justified by reasonable suspicion under *Terry,* or probable cause to believe a traffic violation has occurred under *Whren v. United States,* 517 U.S. 806, 810 (1996), or to believe that the vehicle contained contraband or that Mr. Webster had been engaged in criminal activity under *Beck v. Ohio*, 397 U.S.89 (1964). None of these situations occurred in the instant matter. Because the initial stop of Mr. Webster was prohibited by the Fourth Amendment, the subsequent search, questioning, answers and consent that followed the unconstitutional seizure must be suppressed/excluded. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

At an evidentiary hearing, Mr. Webster will show that Officer Manora had no "reasonable suspicion" upon which he could base his initial stop. Indeed, even if Officer Manora is found to have had the "minimal, objective justification" necessary for the initial stop, any further detention of Mr. Webster after the officer's determination that the vehicle was a Grand Am and did not fit the "look out" description which had been circulated, was in violation of Mr. Webster's Fourth

7

Amendment rights. In addition, the Eleventh Circuit has made it clear that an officer's hunch cannot form the basis of continued detention. *Perkins*, 348 F.3d at 965. Because the detention of Mr. Webster was prohibited by the Fourth Amendment, any questioning, answers and consent that stem from the detention must be suppressed/excluded. *Perkins*, 348 F.3d at 969 (citing *United States v. Terzado-Madruga*, 897 F.3d 1099, 1112 (11th Cir. 1990)).

### Conclusion

Because the initial stop of Mr. Webster was in violation of the strictures of the Fourth Amendment, and there was no resulting Fourth Amendment justification for the subsequent search of Mr. Webster or his vehicle, any and all evidence, information or statements obtained as a result of his unlawful detention and the subsequent search of his person and his vehicle must be suppressed.

**WHEREFORE**, the Defendant prays that this Honorable Court conduct an evidentiary hearing to review the facts and circumstances surrounding the stop of his vehicle, and after conducting such hearing, issue an Order granting the motion and suppressing all evidence seized during the seizure or as a result thereof. Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Dated this 5th day of November, 2007.

Respectfully submitted,

s/ Michael J. Petersen
**MICHAEL J. PETERSEN**
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104

Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-cr-166-WKW |
| | ) | |
| JOHN WEBSTER | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Kent Brunson, Esq., Assistant U. S. Attorney, 131 Clayton Street, Montgomery, Alabama 36104.

    Respectfully submitted,

s/ Michael J. Petersen
**MICHAEL J. PETERSEN**
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M