# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-cr-166-WKW |
| | ) | |
| **JOHN WEBSTER** | ) | |

### SUPPLEMENTAL BRIEF TO MOTION TO SUPPRESS STOP, SEARCH AND SEIZURES

**COMES NOW** the Defendant, John Webster, by and through undersigned counsel, Michael J. Petersen, and pursuant to this Court's Order of November 20, 2007, (Doc #28), and hereby submits the following in support of his motion to suppress any and all evidence seized by the government as a result of the stop of Mr. Webster's vehicle on March 28, 2007. This evidence includes any statements, physical evidence and/or records obtained as a result of the stop and subsequent search of Mr. Webster or his vehicle. This supplemental motion addresses the issue of whether the doctrine of inevitable discovery precludes a finding that this motion to suppress is to be granted as a result of the arrest of Mr. Webster without probable cause.

### Relevant Facts

At the evidentiary hearing on November 20, 2007, Corporal Manora of the Montgomery Police Department testified that on March 28, 2007, a look out was issued by the Montgomery Police Department dispatcher. Officer Manora recalled that the dispatcher requested that officers watch for a dark colored automobile with the words "Down South Customs" or something similar printed on the rear window. The subject vehicle had allegedly been involved in a shooting earlier that day. At approximately 6:40 p.m. that day, Officer Manora testified that he observed a dark blue Grand Am

traveling west on Eastern Boulevard near the Troy Highway exit. Printed on the rear window of this vehicle were the words "Down & Dirty Customs." It is undisputed that this vehicle was being driven by the defendant, John Webster, Jr.

Officer Manora stated that he followed the vehicle for several minutes until other officers arrived. Officer Manora testified that he called for assistance because he was on a motorcycle unit. When a patrol vehicle arrived, Officer Manora conducted a stop of the vehicle in the Wal Mart parking lot located at 3801 Eastern Boulevard.

During examination, Officer Manora testified that the only reason for the stop was the "look out" that had been issued approximately an hour and a half earlier, which Officer Manora believed matched Mr. Webster's vehicle. Officer Manora further testified that he did not stop Mr. Webster for a traffic violation.

Following the stop of Mr. Webster's vehicle, Officer Manora asked Mr. Webster to exit his vehicle. The officer testified that he immediately arrested Mr. Webster and then, following the arrest, conducted a "pat down" search. Pursuant to that search, a firearm and a quantity of alleged marijuana were located. After arresting Mr. Webster Officer Manora contacted the Montgomery Police Department dispatcher and determined that Mr. Webster's vehicle did not match the description of the vehicle described by the "look out." Mr. Webster was subsequently charged in this court in a two count indictment, with being a felon in possession of a firearm and with simple possession of marijuana.

## Issue Presented

**Whether the Inevitable Discovery Doctrine Precludes a Finding That Mr. Webster's Motion to Suppress is Due to Be Granted and the Evidence Discovered as a Result of the Illegal Arrest and Subsequent Search is to be Excluded?**

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and seizure. *See United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). Under certain circumstances, the exclusionary rule is tempered by the doctrine of "inevitable discovery," which allows the use of illegally obtained evidence if it would have been inevitably discovered through legal means. *See Jefferson v. Fountain*, 382 F.3d 1286, 1295 (11th Cir. 2004). However, as will be fully described below, the inevitable discovery doctrine is not applicable to this case.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *Const. Amend IV*. As a result of an improper search or seizure, evidence seized must be excluded.

The Fourth Amendment exclusionary rule was born as a matter of federal law in *Weeks v. United States*, 232 U.S. 383 (1914), and extended to state criminal trials in *Mapp v. Ohio*, 367 U.S. 643 (1961). Its purpose is not to redress the injury to the search and seizure victim's privacy. *See Linkletter v. Walker*, 381 U.S. 618 (1965). Instead, "the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). The rule is calculated to prevent, not to repair. Its purpose is to deter, that is, to compel respect for the constitutional guaranty in the only effectively available way, by removing the incentive to disregard it. *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

The Supreme Court has identified at least three separate categories of police-citizen

encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick*, 501 U.S. 429, 433 (1991); (2) legitimate and restrained investigative stops, short of arrest, to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio*, 392 U.S. 1, 30 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois*, 422 U.S. 590, 601 (1975).

Officer Manora's testimony that he arrested Mr. Webster establishes this encounter to be of the third variety, that is, a custodial detention which must be scrutinized under *Brown v. Illinois*.

During his testimony at the evidentiary hearing, Officer Manora did not articulate a reason for arresting Mr. Webster before conducting the "pat down" search. The officer did state that he conducted the "pat down" for officer safety, but admitted that Mr. Webster had already been arrested before that occurred. Officer Manora also testified that Mr. Webster had not violated any traffic laws and that the only reason Mr. Webster was stopped was because his vehicle matched the vague description that Officer Manora believed the police dispatcher had broadcast. Officer Manora also testified that he followed Mr. Webster for several minutes prior to effecting the stop, and did not bother to contact the police dispatcher to confirm the "look out" description.

Thus, the only basis for the arrest was Officer Manora's hunch that Mr. Webster's car matched the "look out" description. In this Circuit, a "look out" broadcast by a police dispatcher by itself may provide law enforcement officers with enough reasonable suspicion to conduct a *Terry* stop, *See United States v. Simms*, 385 F.3d 1351 n.2 (11th Cir. 2004). However, a *Terry* stop only allows officers to stop a person and detain them briefly in order to investigate a reasonable suspicion that the person has engaged in or is about to engage in criminal activity. *See Terry v. Ohio*, 392 U.S.

1, 30 (1968). Officer Manora exceeded the bounds of a *Terry* stop when he arrested Mr. Webster as soon as the defendant exited his vehicle. Therefore, Mr. Webster's arrest, without probable cause, was illegal. The physical evidence discovered following that illegal arrest must be excluded. *Wong Sun v. United States*, 371 U.S. 471, 487 (1963).

Once a defendant demonstrates that the government discovered evidence through an illegal search and seizure, the court must exclude it unless the government can satisfy an applicable exception to the exclusionary rule. The "inevitable discovery" rule is one possible exception. The taint may be disregarded if the government can demonstrate that it would have discovered the same evidence through an "independent source." *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). See *Agius v. United States*, 413 F.2d 915 (5th Cir. 1969); *United States v. Castellana*, 488 F.2d 65, 67 (5th Cir. 1974) *rev'd. on other grounds*, 500 F.2d 325 (5th Cir. 1974)(*en banc*)[1]. See also *Wong Sun v. United States*, 371 U.S. 471, 487 (1963). As will be shown, the evidence which Mr. Webster is contesting in this case as fruit of the poisonous tree falls outside of this exception.

In the Eleventh Circuit, "[i]n order for evidence to qualify for admission under this exception to the exclusionary rule, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004); *accord United States v. Terzado-Madruga*, 897 F.2d 1099, 1114 (11th Cir. 1990); *United States v. Satterfield*, 743 F.2d 827, 846 (11th Cir. 1984); *United States v. Brookins*, 614 F.2d 1037, 1048 (5th Cir. 1980).

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

As for the degree of certainty required, the Eleventh Circuit has said that "we do not require absolute inevitability of discovery but simply a reasonable probability that the evidence in question would have been discovered other than by the tainted source." *Brookins*, 614 F.2d at 1042 n. 2. This requirement is sometimes referred to as the "active pursuit" rule, and it is not adhered to by all circuits. However, it is clearly binding in the Eleventh Circuit. "This circuit also requires the prosecution to show that the lawful means which made discovery inevitable were being *actively pursued* prior to the occurrence of the illegal conduct. *United States v. Virden*, 488 F.3d 1317, 1322-1323 (11th Cir. 2007) (emphasis in original). This . . . requirement is especially important. Any other rule would effectively eviscerate the exclusionary rule, because in most illegal search situations the government could have obtained a valid search warrant had they waited or obtained the evidence through some lawful means had they taken another course of action." *Id. See also United States v. Hernandez-Cano*, 808 F.2d 779, 784 (11th Cir. 1987); *Jefferson v. Fountain*, 382 F.3d 1286, 1295 (11th Cir. 2004).

The prosecution failed to show during the evidentiary hearing that there were any lawful means being actively pursued which would have made the discovery of the evidence inevitable at the time of Mr. Webster's arrest. Officer Manora never contacted the dispatcher to inquire whether Mr. Webster's vehicle matched the "look out" description. *See United States v. Simms*, 385 F.3d 1351 n.2 (11th Cir. 2004). It is notable that while Officer Manora testified that in the several minutes he was following Mr. Webster, he had sufficient time to make a radio call to the dispatcher to request assistance in the form of a patrol car, he did not at the same time ask the dispatcher to repeat the "look out" information. In *Simms*, the vehicle was stopped not only because of a "look out" but also because the driver had committed a traffic infraction. *Id*. at 1351. However, Officer

Manora testified that he had not stopped Mr. Webster for any reason other than the vague "look out" issued by the police dispatcher.

Officer Manora also arrested Mr. Webster as soon as the defendant exited his vehicle in the parking lot of the Wal Mart store. If Officer Manora had stopped Mr. Webster's vehicle, then contacted the dispatcher prior to ordering Mr. Webster to get out, he would have discovered that Mr. Webster's vehicle did not match the description broadcast by the dispatcher. Had this been done, there would have not been reason for even a *Terry* stop. Officer Manora testified at the evidentiary hearing that even though he followed Mr. Webster's vehicle for several minutes while he waited for a patrol car to arrive, he did not check with the dispatcher until after he had made the stop and arrested Mr. Webster. Officer Manora conceded that he then discovered that the vehicle described in the "look out" did not match Mr. Webster's. As a result of Officer Manora's precipitous actions, there were no lawful means being *actively pursued* at the time Mr. Webster was arrested and then searched that would have resulted in the inevitable discovery of the physical evidence.

Without a reason for a stop, there would have been no search, no discovery of the physical evidence, and no reason for Mr. Webster's continued detention. *See United States v. Virden*, 488 F.3d 1317, 1322-1323 (11th Cir. 2007). Officer Manora's illegal arrest of Mr. Webster clearly offends the Fourth Amendment and does not fit within the boundaries of the exclusionary rule as established by Eleventh Circuit precedent.

**Conclusion**

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the

victim of the illegal search and seizure. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990). *See also Weeks v. United States*, 232 U.S. 383, 391-93 (1914).

Because Mr. Webster's arrest was in violation of the strictures of the Fourth Amendment, and there was no resulting Fourth Amendment justification for the subsequent search of Mr. Webster or his vehicle, any and all evidence, physical or otherwise, information or statements obtained as a result of his unlawful detention and the subsequent search of his person and his vehicle must be suppressed.

**WHEREFORE**, the Defendant prays that this Honorable Court issue a report and recommend that the motion be granted and all evidence seized during the arrest or as a result thereof be suppressed/excluded. Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Dated this 28th day of November, 2007.

> Respectfully submitted,
>
> s/ Michael J. Petersen
> **MICHAEL J. PETERSEN**
> Assistant Federal Defender
> 201 Monroe Street, Suite 407
> Montgomery, Alabama 36104
> Phone: (334) 834-2099
> Fax: (334) 834-0353
> E-mail: michael_petersen@fd.org
> ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:07-cr-166-WKW |
| | ) | |
| JOHN WEBSTER | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Kent Brunson, Esq., Assistant U. S. Attorney, 131 Clayton Street, Montgomery, Alabama 36104.

Respectfully submitted,

s/ Michael J. Petersen
**MICHAEL J. PETERSEN**
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M