IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR CASE NO: 2:07-cr-166-WKW |
| | ) | |
| JOHN WEBSTER | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Currently pending before the Court is Defendant's Motion to Suppress (Doc. #22). On 19 November 2007, this Court held a hearing on Defendant's Motion. On 28 November 2007, Defendant filed a "Supplemental Brief to Motion to Suppress Stop, Search and Seizures" (Doc. #35). Defendant seeks to suppress "all evidence seized during the arrest or as a result thereof be suppressed/excluded. Additionally, any and all statements obtained as a result of the unlawful seizure are 'fruit[s] of the poisonous tree' and are due to be suppressed as well."[1] (Doc. #22 at 8). Upon consideration of the motion and the testimony at the evidentiary hearing, the undersigned RECOMMENDS that the motion be DENIED.

**I.     BACKGROUND**

Based on the parties' briefs and testimony at the hearing held on 19 November 2007, and to a preponderance of the evidence,[2] the Court finds as follows:

---

[1] Defendant failed to put on any evidence of any statements either in his brief or at the hearing, or to make any allegations of a statement. Thus, the Court is unaware whether any such statement exists and, as such, disregards this portion of the request for relief.

[2] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

On 28 March 2007, the Montgomery Police Department (MPD) issued a be-on-the-lookout (BOLO) for a dark colored vehicle, unknown make and model, with writing on the rear window to the effect of Down South Customs or something very similar. The vehicle was wanted in connection with a shooting.

While patrolling on a motorcycle, Officer Menora, a fifteen-year veteran with the MPD, spotted Webster driving a dark colored Grand Am with the words "Down and Dirty Customs" printed on the rear window. Officer Menora followed Webster and called for backup to assist him in making a stop of Webster's car.

Officer Menora then took the following steps: stopped Webster's vehicle in a Walmart parking lot; approached Webster; asked him for identification; and informed him of the reason for the stop. Officer Manora informed Webster that he had been stopped, because his vehicle matched the BOLO's description of a vehicle involved in a shooting. Officer Manora then requested Webster exit the vehicle and asked if he could conduct a pat-down search of Webster's person for officer safety. The record is not specifically clear, but at some point either prior to or during the stop, other officers arrived to assist Officer Manora. It is clear they were present when the pat-dawn took place.

During the pat-down, Officer Manora located a 9 millimeter gun in the right-side waistband of Webster's pants. After the officers secured the gun, they placed Webster under arrest. Incident to that arrest, Webster was searched, and marijuana was located in his

outer pocket. Next, the officers contacted dispatch to inform them of the arrest, were given a more accurate and correct BOLO, and were able to determine that Webster's vehicle was not the vehicle involved in the shooting.

## II. DISCUSSION

Defendant makes the following three arguments in support of his motion to suppress. First, in his original Motion to Suppress (Doc. #22), Webster claims the stop of his vehicle was unreasonable because the officer lacked a reasonable suspicion of criminal activity. Second, in his Supplemental Brief (Doc. #35), Webster argues that while the BOLO may have provided the officer with reasonable suspicion to make a *Terry* stop, the officer exceeded the bounds of a *Terry* stop when he arrested Webster immediately upon Webster's exit of his vehicle. And third, Webster claims the inevitable discovery exception to the exclusionary rule does not apply in this case. The second and third arguments are based on what appears to be a misunderstanding of the facts presented at the evidentiary hearing.

Throughout his Supplemental Brief (Doc. #35), Webster states that Officer Manora testified he arrested Webster "as soon as he exited his vehicle," then conducted a pat down for officer safety. (Doc. #35 at 5); (Doc #36 at 2) ("The officer testified that he immediately arrested Mr. Webster [after asking him to exit the vehicle] and then, following the arrest, conducted a 'pat down' search."). In fact, Officer Manora testified he stopped Webster's vehicle, informed Webster of the reason for the stop, then requested Webster exit the vehicle so that he could perform a pat-down of Webster's person, for officer safety. Officer Manora

3

also testified that upon finding the gun, and, after securing the weapon, he placed Webster under arrest and found the alleged marijuana in a search pursuant to the arrest.[3] At no time during the hearing did Officer Manora testify he immediately arrested Webster upon his exiting the vehicle. Neither did Officer Manora testify he found the gun on Webster's person in a search *following* arrest. With this proper understanding of the facts, the Court will address each of Webster's arguments below.

**A. The Stop**

The Fourth Amendment to the United States Constitution guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. Const. amend. IV. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief." *Del. v. Prouse*, 440 U.S. 648, 653 (1979). As the Eleventh Circuit has recognized:

> The Supreme Court has identified at least three separate categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Fl. v. Bostick*, 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio*, 392 U.S. 1 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Ill.*, 422 U.S. 590 (1975).

---

[3] The Government also mistakes the facts in its argument, by asserting that Officer Manora found the alleged marijuana during the *Terry* stop and prior to the arrest. (Doc. #36 at 2).

*U.S. v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

Webster argues "Officer Manora's testimony that he arrested Mr. Webster establishes this encounter to be of the third variety, that is, a custodial detention which must be scrutinized under *Brown v. Illinois*." (Doc. #35 at 4). This is based on Webster's mistaken belief that:

> During his testimony at the evidentiary hearing, Officer Manora did not articulate a reason for arresting Mr. Webster before conducting the 'pat down' search. The officer did state that he conducted the 'pat down' for officer safety, but admitted that Mr. Webster had already been arrested before that occurred.

(Doc. #35 at 4). As stated above, this was not the testimony of Officer Manora. Rather, this case is properly analyzed pursuant to *Terry v. Ohio*, because Officer Manora made a brief investigatory stop, which stopped short of arrest, prior to finding the gun.

Even in the absence of probable cause, the police may stop a car and briefly detain it and its occupants to investigate a reasonable suspicion that such persons are involved in criminal activity. *U.S. v. Mikell*, 102 F.3d 470, 474 (11th Cir. 1996). However, *"Terry* requires that an officer have an objective, reasonable suspicion of criminal activity" to make the stop. *U.S. v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). "To determine whether reasonable suspicion exists, the court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (internal quotation marks omitted). "Reasonable suspicion, while dependent upon the

'totality of the circumstances,' including both the content of the information and its reliability, 'can arise from information that is less reliable than that required to show probable cause.'" *U.S. v. Heard*, 367 F.3d 1275, 1278 (11th Cir. 2004) (quoting *Ala. v. White*, 496 U.S. 325, 330 (1990)). "Nevertheless, the police are required to articulate some minimal, objective justification for the stop." *Mikell*, 102 F. 3d at 475.

Here, Officer Manora stopped Webster's vehicle pursuant to the BOLO. He testified that the BOLO had specified a dark sedan, unknown make and model, with the words "Down South Customs or something to that effect" printed on the rear window. Webster admits he was driving a dark sedan with the words "Down and Dirty Customs" written on the rear window when he was stopped by Officer Manora. At the hearing, Officer Manora was able to articulate a minimal objective justification - the unique similarities of Webster's car to the BOLO - for the stop.

In his original Motion to Suppress (Doc. #22), Webster stated the BOLO had advised officers that a "Grand Marquis" had been involved in a shooting. Webster argues it was unreasonable for Officer Manora to mistake Webster's Grand Am for a a full size "Grand Marquis," compounded by an unreasonable mis-reading between "Down and Dirty Customs" verses "Down South Customs." This argument appears to be based on Natacia Webster's (Webster's sister) belief she had heard a television news broadcast earlier that day, stating "they were looking for a blue Grand Marquis or a blue Crown Victoria." She also testified one of the officers at the scene where Webster was arrested informed her that

Webster had been stopped and arrested because Webster's car fit the description of a "Grand Marquis" involved in a shooting earlier that day. At the hearing, she failed to identify Officer Manora as the officer who informed her the police were looking for a "Grand Marquis."

Regardless of what the television news may have broadcast, or even what another officer at the scene of the arrest may or may not have said, what is relevant, is the information Officer Manora had when he initiated the stop and whether that information was enough for a reasonable suspicion.[4] *See Hunter*, 291 F.3d at 1306. As stated above, Officer Manora testified the BOLO was for a dark sedan, not specifically a Grand Marquis.[5] The BOLO's description of a dark colored vehicle would certainly not be enough for reasonable suspicion. However, that description, together with the description of the rather unique writing on the rear window, and its similarity to the vehicle driven by Webster, provided Officer Manora with reasonable suspicion to stop Webster's car.

The Court is unpersuaded by Webster's argument that it was unreasonable for Officer Manora to mistake the words "Down and Dirty Customs" and "Down South Customs" affixed to the rear window of the vehicle. Officer Manora testified the BOLO was for the

---

[4] At the hearing, Webster conceded Natasha Webster's testimony did not "tie in" the news broadcast information and the other officer's alleged statement, with the information Officer Manora had when he made the stop.

[5] Officer Manora testified regarding a memorandum given to his supervisors following Webster's arrest. The memorandum provided that the BOLO may have specified a Grand Prix was involved in the shooting. This information only strengthens the Government's argument that Officer Manroa had reasonable suspicion to make the stop. As Officer Manora correctly testified, the Grand Am and the Grand Prix are "similar type vehicles."

words Down South Customs or something very similar. Based on the similarities, it was reasonable for Officer Manora to believe Webster's vehicle may have been the vehicle described in the BOLO, and Officer Manora was entitled to make a *Terry* stop to either confirm or disaffirm that suspicion.

Webster appears to concede this point in his Supplemental Brief. (Doc. #35 at 4) ("In this Circuit, a 'look out' broadcast by a police dispatcher by itself may provide law enforcement officers with enough reasonable suspicion to conduct a *Terry* stop."). Webster then turns his argument to the proposition that Officer Manora exceeded the bounds of a *Terry* stop by immediately arresting Webster based solely on the BOLO. As stated above, this argument is based on the mistaken belief that Officer Manora testified at the hearing he arrested Webster prior to finding the gun. Webster offers no other basis for this argument, which is inapposite to the record. Officer Manora testified that it was after finding the gun, pursuant to a weapons search during the *Terry* stop that he arrested Webster.

Under *Terry,* a law enforcement officer, during the course of an investigatory stop, may conduct a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. The test is "whether a reasonably prudent man in the circumstance would be warranted in the belief that his safety or that of others was in danger." *Id*. (citations omitted). In this case, Officer Manora testified the BOLO was for a dark-colored vehicle with unique writing on the rear window that was wanted in connection with a shooting.

Thus, Officer Manora was permitted to do a pat-down search because "he ha[d] reason to believe that he [was] dealing with an armed and dangerous individual, regardless of whether he ha[d] probable cause to arrest the individual for a crime." *Id*.; *see U.S. v. Gibson*, 64 F.3d 617, 624 (11th Cir. 2995) ("A law enforcement officer responding to a tip involving guns may take these hazards into consideration when balancing the suspect's interests against the need for law enforcement officers to protect themselves and other prospective victims of violence.") (internal citations and quotations omitted).

The legal *Terry* stop turned into a full blown arrest when Officer Manora, while performing the pat-down of Webster's person found a gun.

**B. The Arrest**

Webster argues that his arrest was illegal because "Officer Manora exceeded the bounds of a *Terry* stop when he arrested Mr. Webster as soon as the defendant exited his vehicle. Therefore, Mr. Webster's arrest, without probable cause, was illegal." (Doc. #35 at 5). This argument is based solely on Webster's mistaken belief that Officer Manora testified he arrested Webster *before* finding the gun. As stated above, Officer Manora testified that he arrested Webster *after* the gun was discovered. Thus, Webster has failed to establish or even properly plead an illegal arrest based on the facts presented at the hearing.

During the suppression hearing, the Court inquired into the arrest of Webster and questioned Officer Manora concerning his basis for arresting Webster, despite no knowledge of Webster's inability to have legal possession of the gun. Officer Manora testified he

9

believed he had probable cause to make the arrest in light of the facts surrounding the BOLO and upon finding the gun.

"Probable cause to arrest exists when the totality of the facts and circumstances support a reasonable belief that the suspect had committed or was committing a crime." *U.S. v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (internal quotation omitted). The cases surveyed by the Court regarding probable cause under both Alabama and federal case law lead this Court to believe that the facts and circumstances surrounding the *Terry* stop, the discovery of the gun, and the resulting arrest present a "close-call" as to whether Officer Manora had probable cause to arrest Webster.[6] However, the Court declines to make such a determination in this case, where, assuming *arguendo* that the arrest was illegal, the evidence against Webster would not be suppressed under the inevitable discovery exception to the exclusionary rule.[7]

---

[6] *See U.S. v. Redick*, 2006 WL 908153 at *2 (D. Conn., April 5, 2006) ("As a preliminary matter, the Court notes that, once it was revealed that Mr. Redick had been concealing a firearm in his waistband, police officers had probable cause to arrest him on suspicion of illegally possessing the weapon."); *see also Adams v. Williams*, 407 U.S. 143, 148 (1972) (holding, in the context of a Terry stop, that "[o]nce [the police officer] had found the gun precisely where the informant had predicted, probable cause existed to arrest [defendant driver] for unlawful possession of the weapon")); *see also U.S. v. Dunn*, 345 F.3d 1285 (11th Cir. 2003); *see also United States v. Arcobasso*, 882 F.2d 1304, 1306 (8th Cir. 1989) (holding that there was probable cause to arrest the defendant for knowingly shooting into a dwelling where the officer responded to a report of gunshots and saw the defendant "dry-firing" a gun); *see also Daniels v. Downing*, 2003 WL 252114 *4 (D.Minn. Jan. 30, 2003) (holding probable cause to arrest for violating Minneapolis's ordinance prohibiting the taking of a substantial step toward firing a weapon where defendant was seen pointing what turned out to be a BB gun at a house).

[7] Further, in effect, such a determination would be *sua sponte*, where Webster has failed to argue that an illegal arrest took place *after* the gun was found.

**C. Inevitable Discovery**

"Evidence seized after an illegal seizure should be suppressed as the fruit of the poisonous tree." *U.S. v. Davis*, 313 F.3d 1300, 1202 (11th Cir. 2002) (internal quotation omitted). The evidence seized pursuant to the arrest was the alleged marijuana found in Webster's front pocket. The Court, assuming an illegal arrest, must then determine whether the evidence would still be admissible against Webster under the inevitable discovery exception to the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 443-45 (1984).

> In the Eleventh Circuit, [i]n order for evidence to qualify for admission under this exception to the exclusionary rule, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct.

*United States v. Delancy*, 502 F.3d 1297, 1314-15 (11th Cir. 2007) (quoting *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004)).[8]

Officer Manora found the weapon pursuant to the lawful *Terry* stop, placed Webster under arrest, then found the alleged marijuana in a search pursuant to the arrest. He also testified that after the weapon was seized, other officers, who had arrived on the scene, began to investigate whether or not Webster had any prior felony offenses.

It is clear the police were actively involved in legally investigating Webster prior to

---

[8] Although it is the Government's burden to prove inevitable discovery, *U.S. v. Brookins*, 614 F.2d 1037, 1048 (11th Cir. 1980), their failure to address Webster's arguments on the issue are likely a result of Webster's failure to shift the burden, by first establishing an illegal arrest. Thus, the Court relies on the record in continuation of this solo, *arguendo,* tour of the Fourth Amendment.

the arrest (i.e., the *Terry* stop). Further, the exception to the exclusionary rule would apply in this case, because the gun was already in the possession of the police, through a legal *Terry* stop, when the arrest occured. *See United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007) ("For the exception to apply, the prosecution need[s] to show that the police would have obtained the evidence 'by virtue of ordinary investigations *of evidence or leads already in their possession*.'") (quoting *U.S. v. Brookins*, 614 F.2d 1037, 1048 (11th Cir. 1980) (emphasis added)). Once the other officers completed their background check of Webster, and determined he was illegally in possession of the firearm, Webster would have been arrested, regardless of whether his vehicle was the vehicle involved in the earlier shooting. Then, the alleged marijuana would have been discovered though a search incident to the lawful arrest. Thus, the Court finds that even if an illegal arrest occurred after finding the gun on Webster's person, the inevitable discovery exception to the exclusionary rule would apply and all evidence seized would be admissible against Webster at trial.

### III.  CONCLUSION

The similarities between the information given in the BOLO, to the general and unique characteristics of Webster's car provided Officer Manora with reasonable suspicion to conduct a *Terry* stop, including a pat-down of Webster's person for his safety. Webster failed to show that an illegal arrest occurred and thus poisoned the fruits of the incident search. However, regardless of whether an illegal arrest occurred, all evidence seized would be admissible at trial against Webster, based on the doctrine of inevitable discovery.

Therefore, it is the RECOMMENDATION of the Magistrate Judge that Webster's Motion to Suppress (Doc. #22) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before January 3, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 20th day of December, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE