IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CASE NO: 2:07-cr-166-WKW |
| ) | |
| JOHN WEBSTER ) | |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

**COMES NOW JOHN WEBSTER** by and through undersigned counsel, Michael J. Petersen, and respectfully submits the following objections to the Magistrate Judge's Recommendations dated December 20, 2007. Mr. Webster would object to the Magistrate Judge's findings as to: "Section A. The Stop;" "Section B. The Arrest;" and "Section C. Inevitable Discovery;" and finally, as to the Recommendation that his Motion to Suppress be denied. (*See* Doc. #37).

**SPECIFIC OBJECTIONS**

1.   **Section A. The Stop.**

Mr. Webster objects to the Magistrate Judge's finding that "Officer Manora was entitled to make a *Terry* stop to either confirm or disaffirm" the suspicion that Mr. Webster's vehicle was the one described in the BOLO. (Doc. # 37 at 8). Mr. Webster also objects to the Magistrate Judge's finding that Officer Manora "was able to articulate a minimal objective justification – the unique similarities of Webster's car to the BOLO – for the stop." (Doc #37 at 6).

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles."

*United States v. Arvizu*, 534 U.S. 266, 273 (2002). For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a "reasonable suspicion" to believe that criminal activity "may be afoot.) *Id.* When determining whether reasonable suspicion exists, the court must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspected legal wrongdoing. *Arvizu* 534 U.S. at 273. At the time of the stop Officer Manora did not have the necessary "particularized and objective basis" to stop Mr. Webster.

The information which Officer Manora had available to him was not sufficient enough to create a reasonable suspicion that the vehicle Mr. Webster was driving was the subject of the BOLO which had been issued one and a half to two hours earlier. During the evidentiary hearing, Officer Manora admitted that even though he followed Mr. Webster for some time prior to stopping him, he did not contact the dispatcher to find out if the vehicle he was following matched the BOLO, (Transcript at 15), even though he did contact the dispatcher to request a patrol car backup. (Transcript at 7). It was not until after the stop and Mr. Webster's arrest that Officer Manora finally contacted the dispatcher and discovered that Mr. Webster's vehicle did not match the description. (Transcript at 9 & 11). Officer Manora testified that the only reason for the stop was the writing on the rear window of Mr. Webster's vehicle and that Mr. Webster's vehicle was dark in color. (Transcript at 8). The officer stated he did not have a description of the make, model, or year of the vehicle. (Transcript at 8). However, the officer did admit that when he contacted the dispatcher following the stop and Mr. Webster's arrest, the dispatcher confirmed that Mr. Webster's vehicle did not fit the description broadcast in the BOLO. (Transcript at 9).

The Magistrate incorrectly found that Officer Manora "was able to articulate a minimal objective justification – the unique similarities of Webster's car to the BOLO – for the stop. (Doc

#37 at 6). Mr. Webster contends that in the instant case, the information which Officer Manora utilized lacked even the moderate indicia of reliability present in *Alabama v. White*, 496 U.S. 325 330 (1990).

The Court wrote in *White* that although the police had received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel, this information would not have justified a *Terry* stop. *White* 496 U.S. at 329. What allowed the Court to find that the suspicion in *White* was reasonable was the police surveillance that was conducted following the tip which confirmed the information in the tip. Writing in *Florida v. J.L.*, 529 U.S. 266 (2000), the Supreme Court remarked that, even with the confirming law enforcement surveillance, the *White* case was "borderline." *J.L.*, 529 U.S. at 271. If *White* was a "borderline" case, with all of the information contained in the tip, then the instant case of a BOLO for a dark colored car with writing on the rear window surely crossed that borderline into an impermissible stop. These characteristics are too vague to support a stop because there are simply too many vehicles which could fit this description. *Id.* Therefore the Magistrate should have found that based upon the totality of the circumstances, Officer Manora did not articulate a minimal objective justification for his stop of Mr. Webster.

The Magistrate also notes that Mr. Webster "appears" to concede in his Supplemental Brief (Doc. #35 at 4), that a BOLO is sufficient in this Circuit to justify a *Terry* stop. However, the Magistrate misinterpreted Mr. Webster's position. Mr. Webster pointed out that in a footnote, a panel of this Circuit noted that a "look out" broadcast by a police dispatcher by itself *may* provide law enforcement officers with enough reasonable suspicion to conduct a *Terry* stop. (*emphasis*

3

*added*). *See United States v. Simms*, 385 F.3d 1351 n.2 (11th Cir. 2004). However, this Circuit does not appear to have established any precedent concerning a *Terry* stop which was prompted solely by a BOLO.

However, even if there were such precedent, a vague and unspecific BOLO, just as an anonymous tip, would not pass scrutiny under the requirements of the Fourth Amendment. *White* 496 U.S. at 329. *See e.g. United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1999) (Whether a particular tip or BOLO report provides a sufficient basis for an investigatory stop may depend upon the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.)

In the instant matter, the information contained in the BOLO was not sufficiently reliable and specific to support even a minimally intrusive *Terry* stop of Mr. Webster's car. *See also United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005) (holding that a radio dispatch about a "red vehicle" being involved in a shooting incident in a certain area was insufficient to support the stop of a red car in that area fifteen minutes later); *United States v. Lopez-Gonzalez*, 916 F.2d 1011 (5th Cir. 1990) (finding reasonable suspicion based on a tip that two vehicles would be at a certain location near the river and travel a certain route, and agents saw that occur after people loaded bales and sacks into the car before leaving); *United States v. Ceniceros*, 204 F.3d 581, 585 (5th Cir. 2000) (finding reasonable suspicion based on a tip that a white 90s model Chevy Lumina would be traveling on Highway 118 from Lajitas, Texas, driven by a lone hispanic male, and the agent, after seeing such a car, ran the license plate and discovered that it was registered to a white woman in Dallas, noticed no Big Bend National Park permit sticker, as many cars in that area had, observed

speed fluctuations and drift, and noticed that the car appeared to be heavily loaded in the back); *United States v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993) (finding no reasonable suspicion based on a tip from an informant reliable in the past that a white male named Frank was driving an orange and white truck and staying at a certain hotel with his girlfriend, and the police saw a white male leave the hotel with a white woman in an orange and white truck); and *United States v. Hernandez*, 477 F.3de 210, 215 (5th Cir. 2007) (finding reasonable suspicion based on fact that the events occurred in an area close to the border, on a notorious alien smuggling route, tip came from someone who had observed the smuggling, the tip provided the color, number, and type of the vehicles). Each of the cases cited above contain more information than that relied upon by Officer Manora when he stopped Mr. Webster.

Therefore, the Magistrate should have found that Officer Manora did not articulate a minimal objective justification to stop Mr. Webster. Subsequently, the ensuing searches and any arrest were improper and any evidence should have been suppressed.

2.  **Section B. The Arrest.**

In the Report and Recommendation, the Magistrate Judge stated that "probable cause to arrest exists when the totality of the facts and circumstances support a reasonable belief that the suspect had committed or was committing a crime." *U.S. v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007). The Magistrate then declined to make a determination as to Mr. Webster's arrest because "assuming *arguendo* that the arrest was illegal, the evidence against Webster would not be suppressed under the inevitable discovery exception to the exclusionary rule." (Doc #37 at 10). However, because the *Terry* stop was illegal, and the inevitable discovery exception cannot properly apply to the instant matter, Mr. Webster's arrest and the evidence seized against Mr. Webster must have been

5

suppressed.

3. **Section C. Inevitable Discovery**.

Mr. Webster asserts that the stop was not a legal *Terry* stop. Additionally, because the inevitable discovery exception to the exclusionary rule cited by the Magistrate Judge does not apply and the evidence found is due to be suppressed.

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and seizure. *See United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). The Fourth Amendment exclusionary rule is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). Under certain circumstances, the exclusionary rule is tempered by the doctrine of "inevitable discovery," which allows the use of illegally obtained evidence if it would have been inevitably discovered through legal means. *See Jefferson v. Fountain*, 382 F.3d 1286, 1295 (11th Cir. 2004).

Once a defendant demonstrates that the government discovered evidence through an illegal stop, search or seizure, the court must exclude it unless the government can satisfy an applicable exception to the exclusionary rule. The "inevitable discovery" rule is one possible exception. The taint may be disregarded if the government can demonstrate that it would have discovered the same evidence through an "independent source." *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). *See Agius v. United States*, 413 F.2d 915 (5th Cir. 1969); *United States v. Castellana*,

488 F.2d 65, 67 (5th Cir. 1974) *rev'd. on other grounds*, 500 F.2d 325 (5th Cir. 1974)(*en banc*)[1]. *See also Wong Sun v. United States*, 371 U.S. 471, 487 (1963).

In the Eleventh Circuit, "[i]n order for evidence to qualify for admission under this exception to the exclusionary rule, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004); *accord United States v. Terzado-Madruga*, 897 F.2d 1099, 1114 (11th Cir. 1990); *United States v. Satterfield*, 743 F.2d 827, 846 (11th Cir. 1984); *United States v. Brookins*, 614 F.2d 1037, 1048 (5th Cir. 1980).

As for the degree of certainty required, the Eleventh Circuit has said that "we do not require absolute inevitability of discovery but simply a reasonable probability that the evidence in question would have been discovered other than by the tainted source." *Brookins*, 614 F.2d at 1042 n. 2. This requirement is sometimes referred to as the "active pursuit" rule, and it is not adhered to by all circuits. *Id.* However, it is clearly binding in the Eleventh Circuit. "This circuit also requires the prosecution to show that the lawful means which made discovery inevitable were being *actively pursued* prior to the occurrence of the illegal conduct. *United States v. Virden*, 488 F.3d 1317, 1322-1323 (11th Cir. 2007) (emphasis in original). This requirement is especially important. Any other rule would effectively eviscerate the exclusionary rule." *Id.*

As discussed *supra.*, Mr. Webster was stopped illegally. Furthermore, the Government failed to show during the evidentiary hearing that there were any lawful means being actively pursued

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

which would have made the discovery of the evidence inevitable at the time of Mr. Webster's vehicle stop and subsequent arrest. The only means being pursued were the illegal *Terry* stop. The Magistrate Judge erroneously found that "[i]t is clear the police were actively involved in legally investigating Webster prior to the arrest (i.e., the *Terry* stop). (Doc #37 at 12-13).

Even though there was sufficient time to contact the dispatcher to confirm that the vehicle matched the BOLO description, Officer Manora never did so. (Transcript at 15-16). *See United States v. Simms*, 385 F.3d 1351 n.2 (11th Cir. 2004). It is notable that while Officer Manora testified that in the several minutes he was following Mr. Webster, he had sufficient time to make a radio call to the dispatcher to request assistance in the form of a patrol car, he did not at the same time ask the dispatcher to repeat the "look out" information. (Transcript at 15-16).

Officer Manora testified that he did not call back to the dispatcher until after he had arrested Mr. Webster, (Transcript at 15), and that he did so because " we just wanted to make sure that we had the right suspect; we had the right individual. And we wanted to confirm that this was indeed the right vehicle or this was indeed the subject that was wanted." (Transcript at 15). Officer Manora also testified that he "was just following the vehicle and trying to get the vehicle stopped and ascertain that information later on." (Transcript at 15). It is clear that instead of having been actively investigating Mr. Webster prior to the *Terry* stop, Officer Manora had no intent to begin any kind of an investigation until after he stopped Mr. Webster. The officer did not even contact the dispatcher to confirm that Mr. Webster's vehicle fit the description of the BOLO. (Transcript at 15). In fact, when Officer Manora did so, following the stop and subsequent arrest, he discovered that Mr. Webster's vehicle did not match the description given in the BOLO – "it was not the same make and model." (Transcript at 11). In *Simms*, the vehicle was stopped not only because of a "look out" but

also because the driver had committed a traffic infraction. *Id*. at 1351. However, Officer Manora testified that he had not stopped Mr. Webster for any reason other than the vague "look out" issued by the police dispatcher and testified that Mr. Webster had not committed a traffic violation. (Transcript at 11).

There were no lawful means being *actively pursued* that would have resulted in the inevitable discovery of the physical evidence. The only thing Officer Manora was pursuing was an illegal *Terry* stop. *United States v. Virden*, 488 F.3d 1317, 1322-1323 (11th Cir. 2007). While Officer Manora may have had grounds to arrest Mr. Webster after finding the gun, he did not have a constitutionally valid reason to stop Mr. Webster in the first place. Therefore, the Magistrate's finding that the inevitable discovery doctrine applies because the police were actively investigating Mr. Webster prior to the *Terry* stop simply does not comport with the officer's testimony. (Doc #37 at 11-12).

Because the *Terry* stop was improper, and it is clear through Officer Manora's own testimony that no lawful means were being pursued prior to the improper *Terry* stop, the inevitable discovery doctrine is inapplicable in this case. *See United States v. Virden*, 488 F.3d 1317, 1322-1323 (11th Cir. 2007). Officer Manora's actions clearly offend the Fourth Amendment and do not fit within the boundaries of the exclusionary rule as established by Eleventh Circuit precedent. Therefore, the Magistrate Judge's finding that the police were actively investigating Mr. Webster prior to the *legal Terry* stop is incorrect, and the inevitable discovery exclusion is not applicable. Contrary to the Magistrate Judge's finding, any evidence discovered subsequent to an illegal *Terry* stop offends the Fourth Amendment and must be suppressed.

**Conclusion**

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and seizure. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990). *See also Weeks v. United States*, 232 U.S. 383, 391-93 (1914).

Because Mr. Webster's vehicle stop was in violation of the Fourth Amendment, and there was no resulting Fourth Amendment justification for the subsequent search of Mr. Webster or his vehicle, any and all evidence, physical or otherwise, information or statements obtained as a result of his unlawful detention and the subsequent search of his person and his vehicle must be suppressed.

**WHEREFORE,** Mr. Webster asks this Court enter an order suppressing all evidence (statements and items) seized from Mr. Webster following Officer Manora's stop of his vehicle on or about March 28, 2007. Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). This evidence includes, but is not limited to:

(a)  any and all physical evidence seized from the vehicle or Mr. Webster's person;

(b)  any and all statements made by Mr. Webster during or after any stop, search or seizure of the vehicle and/or after Mr. Webster's arrest; and

(c)  any and all evidence obtained as a result or "fruit" of any such seizures.

Dated this 3rd day of January 2008.

                    Respectfully submitted,

                    s/ Michael J. Petersen
                    MICHAEL J. PETERSEN
                    Assistant Federal Defender
                    201 Monroe Street, Suite 407
                    Montgomery, Alabama 36104
                    Phone: (334) 834-2099
                    Fax: (334) 834-0353
                    E-mail: michael_petersen@fd.org
                    ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **CASE NO: 2:07-cr-166-WKW** |
| | ) | |
| **JOHN WEBSTER** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Kent B. Brunson, Esq.
>Assistant United States Attorney
>Office of the United States Attorney
>131 Clayton Street
>Montgomery, Alabama 36104

>Respectfully submitted,

>s/ Michael J. Petersen
>MICHAEL J. PETERSEN
>Assistant Federal Defender
>201 Monroe Street, Suite 407
>Montgomery, Alabama 36104
>Phone: (334) 834-2099
>Fax: (334) 834-0353
>E-mail: michael_petersen@fd.org
>ASB-5072-E48M